Graham B. LippSmith (SBN 221984)
g@lippsmith.com
MaryBeth LippSmith (SBN 223573)
mb@lippsmith.com
Jaclyn L. Anderson (SBN 258609)
jla@lippsmith.com
**LIPPSMITH LLP**
555 S. Flower Street, Suite 4400
Los Angeles, California 90071
Tel: (213) 344-1820 / Fax: (213) 513-2495

Jeremy M. Glapion
*Pro Hac Vice Application Forthcoming*
jmg@glapionlaw.com
**GLAPION LAW FIRM**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: (732) 455-9737 / Fax: (732) 965-8006

Jason T. Dennett (WSBA #30686)
*Pro Hac Vice Application Forthcoming*
jdennett@tousley.com
Kaleigh N. Boyd (WSBA #52684)
*Pro Hac Vice Application Forthcoming*
kboyd@tousley.com
**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101-3147
Tel: (206) 682-5600 / Fax: (206) 682-2992

Attorneys for Plaintiffs and the Class

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL MCGINNIS and CYNDY BOULTON, individually, and on behalf of all others similarly situated;<br><br>                    Plaintiffs,<br>v.<br><br>COMMUNITY.COM, INC.;<br><br>                    Defendant. | Civil Case No.: 2:23-cv-02426<br><br>**CLASS ACTION COMPLAINT**<br><br>(1)  **VIOLATIONS OF CIPA, CAL. PENAL CODE § 631;**<br>(2)  **VIOLATIONS OF CIPA, CAL. PENAL CODE § 632;**<br>(3)  **VIOLATIONS OF CIPA, CAL. PENAL CODE § 632.7; and**<br>(4)  **VIOLATIONS OF ECPA, 18 U.S.C. § 2511** |

## <u>INTRODUCTION</u>

1.     This action arises out Defendant Community.com, Inc.'s ("Defendant") practice of intercepting, holding hostage, and accessing text messages intended for third parties, without the consent of all parties to those text messages.

2.     In so doing, Defendant violates the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630, *et seq*, and the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510, *et seq.*

3.     Accordingly, Plaintiffs bring this action on behalf of separate classes of similarly situated individuals under CIPA and ECPA.

## <u>JURISDICTION AND VENUE</u>

4.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under ECPA, which is a federal statute.

5.     The Court has supplemental jurisdiction over Plaintiffs' CIPA claim pursuant to 28 U.S.C. § 1367.

6.     This Court has jurisdiction over Defendant because Defendant conducts business transactions in this District, has committed tortious acts in and from this District, is headquartered in this district, and has offices located in this District.

7.     Venue is proper in this District because Defendant conducts significant amounts of business transactions within this District; is headquartered in this District; has offices located in this District; and because some of the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

**CLASS ACTION COMPLAINT**

## **PARTIES**

8.     Plaintiff Michael McGinnis is, and at all times mentioned herein was, a citizen and resident of Winnetka, California.

9.     Plaintiff Cyndi Boulton is, and at all times mentioned herein was, a citizen and resident of Anaheim, California.

10.     Plaintiff McGinnis is, and at all times mentioned herein was, a "person" as defined by California Penal Code § 7.

11.     Plaintiff Boulton is, and at all times mentioned herein was, a "person" as defined by California Penal Code § 7.

12.     Defendant is, and at all times mentioned herein was, a Delaware corporation headquartered at 1547 9th Street, Santa Monica, CA 90401.

13.     Defendant is, and at all times mentioned herein was, a "person" as defined by California Penal Code § 7.

14.     Defendant is, and all times mentioned herein was, a "person" as defined by California Penal Code § 632(b).

15.     Defendant is, and at all times mentioned herein was, a "person" pursuant to 18 U.S.C. § 2510(6).

## **COMMUNITY.COM'S PLATFORM**

16.     Defendant provides telephone numbers to "celebrities" ranging from influencers to television stars to professional athletes.

2

17.     These celebrities then, in conjunction with Defendant, hold these telephone numbers out as their *direct* phone numbers—in other words, if a person texts the number, they are directly reaching that celebrity.

18.     This is not true. Instead, when one texts a celebrity at one of Defendant's provided numbers, they are sent a link to Defendant's social media platform (Community.com) and required to sign up for that platform before they can have any possible communication with that celebrity.

19.     Specifically, when one sends a text to a celebrity's Community number, they receive two immediate automated texts back.

20.     The first message contains a link to Defendant's Community.com service which, when clicked, requires the texting party to sign up with Community to proceed further.

21.     Second, the texting party receives a text message ostensibly from the celebrity encouraging the texting party to click the link.

22.     The more people who sign up to communicate with a given celebrity, the more Defendant charges that celebrity.

23.     This bait-and-switch is Defendant's business model.

24.     Indeed, Community.com appears to have employed this same ruse through other prominent personalities' social media accounts, specifically including, but not limited to: Rita Wilson, LL Cool J, Jennifer Lopez, Karlie Kloss, Ashley Graham, The Jonas Brothers, Kerry Washington, Arianna Huffington, Mark Cuban,

**CLASS ACTION COMPLAINT**

1   Tony Hawk, Ryan Seacrest, Deepak Chopra, and Sophia Bush.

2       25.     As described in a fraud complaint against it, Case No. 20-cv-07552 (C.D.

3   Cal.):

4       Community is a technology start-up that utilizes an app that permits its clients—
        including actors, musicians, athletes, and social media influencers—to
5       communicate directly with their fans or followers through SMS text messaging.
        Its stated purpose is to allow more meaningful dialogue between the celebrities
6       and their "community" in a world dominated by a flurry of social media apps that
        can make fans feel invisible or disengaged. Community's clients include, but are
7       not limited to, Ashton Kutcher, Jennifer Lopez, John Legend, Paul McCartney,
        Amy Schumer, Marshmello, Kerry Washington, Sean "Diddy" Combs, Mark
8       Cuban, Sophie Bush, and Ellen DeGeneres.

9       26.     The same process—text, receive back a link to sign up for Defendant's

10  service, and an immediate follow up "from" the celebrity—occurs with every celebrity

11  investigated.

12      27.     The included links lead to a sign-up page that states, "Add your contact,"

13  and asks for First Name, Last Name, Gender Identity, Birthday, City, and Email

14  (Optional).

15      28.     Below these input fields is small text requiring agreement to

16  Community's Terms of Use and Privacy Policy, and below that is an "Accept" button.

17  **COMMUNITY.COM'S INTERCEPTION, RECORDING, AND ACCESS**

18      29.     As of April 5, 2021, Defendant's privacy policy stated the following:

19      If you start a conversation with a Community Leader by sending a text message
        to their Community Number, we collect your phone number along with the
20      contents of the text message, so we won't need to ask you for it.
        …

21

4

**CLASS ACTION COMPLAINT**

When you send or reply to messages via Community, we collect your messages, along with message-related information (such as the phone number from which the message was sent, when the message was sent, and whether the message includes a particular word, phrase, or emoji).

30.    As of February 24, 2023, the privacy policy (which states that it was last updated on November 24, 2021) provides similarly:

When you interact with Community Numbers (including by sending text messages to or calling a Community Number), we collect your messages, including message-related information (such as the phone number from which the message was sent, when the message was sent, the content of the message, any attached files or media . . .).

31.    It refers to all of this as "Messaging Info."

32.    Importantly, Defendant's privacy policy also currently states that it "may analyze your . . . Messaging Info" and generate insights about "you," and that it may "analyz[e] Messaging Info" to operate its platform.

33.    Its terms go even further, stating that Defendant "may access, review, block (including limiting Community Leaders' ability to access messages), or delete your messages at any time and for any reason[.]" (Defendant refers to its celebrity clients as "Community Leaders.")

34.    While the inclusion of such disclosures would ostensibly protect Defendant's interception, recording, and scanning of text messages sent *after* a person signs up for Defendant's service and agrees to its terms and privacy policy, these policies are not disclosed to consumers (like Plaintiffs) prior to their initial text to one of Defendant's Community Leaders.

5

**CLASS ACTION COMPLAINT**

35.     In other words, Defendant intercepts and records, without consent, the initial messages intended for its celebrity clients and essentially holds them hostage from the celebrity clients until the sender signs up for Defendant's social networking service.

36.     Defendant's current Privacy Policy concedes as much, explaining that "[i]f you don't fully complete your registration . . . then some or all of your Messaging Info may not be delivered to [Community Leaders]."

37.     Its terms state similarly that "Community Leaders may not see your messages . . . until you fully complete the registration process" and that "Community may filter messages from reaching a Community Leader for various reasons[.]"

38.     What this means is that when a consumer first sends a text to a celebrity, at a number held out by that celebrity as their direct number, Defendant *prevents* that message from reaching that celebrity, records and scans its contents, and only allows it to continue its journey to the celebrity if the consumer signs up for Defendant's site *and* Defendant deems the message content acceptable to pass its subjective and unclear filters.

## **PLAINTIFF MCGINNIS'S FACTS**

39.     On March 23, 2020, Rita Wilson tweeted:

Going stir crazy? Have a suggestion for my Quarantunes playlist? TEXT ME! (310) 299-9260 - I'm giving you my phone number!! It's actually me. Text me so I can let you know what I'm up to, when I'm in your city (once we can leave our houses), and so we can stay in touch.

**CLASS ACTION COMPLAINT**

40.     Ms. Wilson's tweet was accompanied by a video in which she stated: "I am going to give you my phone number and you can text me and I'm going to text you back . . . feel free to text me to my cell phone number, it is me, I will get it to [sic] you and I will get back to you . . . "

41.     That week, Plaintiff McGinnis sent a text message to Rita Wilson's supposed phone number from his telephone number, ending in 8017. This was the first time Plaintiff McGinnis sent a text to that number.

42.     The number Plaintiff McGinnis texted was not Rita Wilson's direct number.

43.     In response to his text "to" Rita Wilson, Plaintiff McGinnis received two automated text message responses of the kind described herein (a link to Defendant's website and a message ostensibly from Rita Wilson inviting Plaintiff McGinnis to sign up for Defendant's website).

44.     Plaintiff did not sign up for Defendant's site.

**PLAINTIFF BOULTON'S FACTS**

45.     On April 7, 2022, LL Cool J posted a video on TikTok in which he stated, among other things, "I've come up with this crazy idea for us to stay connected. I'ma give you my phone number. I know it's crazy."

46.     On April 7, 2022, Plaintiff Boulton sent a text message to LL Cool J's supposed phone number. This was the first time Plaintiff Boulton sent a text to that number.

**CLASS ACTION COMPLAINT**

47.     Plaintiff Boulton sent this text message from her telephone number ending in 6946.

48.     The number Plaintiff Boulton texted was not LL Cool J's phone number.

49.     In response to her text "to" LL Cool J, Plaintiff Boulton received two automated text message responses of the kind described herein (a link to Defendant's website and a message ostensibly from LL Cool J inviting Plaintiff Boulton to sign up for Defendant's website).

50.     Plaintiff Boulton did not sign up for Defendant's site.

## CIPA CLAIM

51.     As discussed above, Plaintiffs sent text messages to telephone numbers ostensibly belonging to celebrities Rita Wilson and LL Cool J.

52.     These telephone numbers are not Rita Wilson's or LL Cool J's phone numbers.

53.     Instead, as indicated by its privacy policy, Defendant intercepted, recorded, and scanned the messages intended for Rita Wilson and LL Cool J, and refused to deliver the messages to these celebrities, unless and until Plaintiffs paid the toll of signing up for Defendant's site.

54.     At no point prior to sending the initial text message to either of the celebrity telephone numbers were Plaintiffs informed of, nor did they consent to, Defendant's collection and scanning of the text message intended for each celebrity.

**CLASS ACTION COMPLAINT**

55.     The same is true across Defendant's other Community Leaders.

56.     Community Leaders tweet the same or substantially similar tweets as those described above, posting what is ostensibly their cell phone numbers so that members of the public can text with them. In addition to the celebrities listed above, these more than 900 Community Leaders include, but are not limited to, Kerry Washington, Scott Disick, David Dobrik, James Charles, Reba McEntire, James Murray, and Sean Combs.

57.     Upon information and belief, Defendant works with its celebrity "clients" to come up with scripts or general ideas on how to best discuss their telephone number to the public.

58.     As far as Plaintiffs and putative CIPA Class Members (defined below) were concerned, the telephone numbers Rita Wilson, LL Cool J, and other celebrities promoted were direct lines to those celebrities, not subject to interception and logging by interlopers like Defendant.

59.     The promotion of celebrities' purported phone numbers gives consumers an objectively reasonable expectation of confidentiality and that an interloper is not overhearing or recording the conversation.

60.     This expectation is especially important given the language the celebrities use in inviting consumers to text them at their numbers, which suggests personal conversation.

**CLASS ACTION COMPLAINT**

61.     In fact, the celebrities often appear to preempt doubts that the numbers are actually theirs, such as when LL Cool J stated that he "knows it's crazy" to give out his number, which would only arguably be true if, in fact, it were his number. It is decidedly less "crazy" to give out a social media number.

62.     Further, Plaintiffs used their cell phones in the communications that Defendant intercepted.

63.     As it is uncommon for ordinary consumers to send text messages using something other than a cell phone, it is overwhelmingly, if not exclusively, the case that putative CIPA Class Members also used their cell phones in the communications Defendant intercepted.

64.     Accordingly, Defendant has violated three separate provisions of CIPA.

65.     California Penal Code § 631(a) makes liable "[a]ny person . . . who willfully and without the consent of all parties to the communication . . . reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state[.]"

66.     Defendant did not have Plaintiffs' consent to read or attempt to read or learn the contents of their initial messages intended for Rita Wilson or LL Cool J, nor did it have the consent to read or attempt to read or learn the contents of the initial messages putative Class Members sent to any of Defendant's celebrity clients.

**CLASS ACTION COMPLAINT**

67.     Unbeknownst to Plaintiffs and putative Class Members, the messages sent to Defendant's celebrity clients are instead rerouted to and captured by Defendant and never actually reach the celebrity unless the sender signs up for Defendant's site.

68.     Accordingly, Defendant read, or attempted to read, or attempted to learn the contents of the messages sent to its celebrity clients before those messages were delivered to their destination (i.e., while in transit).

69.     Defendant therefore violated California Penal Code § 631.

70.     California Penal Code § 632(a) makes liable "[a] person who, intentionally and without the consent of all parties to a confidential communication, uses a[]. . . recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a . . . telephone[.]"

71.     California Penal Code § 632(c) defines "confidential communication" as "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto."

72.     Prior to sending their first text message, Plaintiffs and putative Class Members were led to believe they were texting directly and privately with the celebrities who provided their phone numbers, making the communication a "confidential communication."

///

///

**CLASS ACTION COMPLAINT**

73.    Defendant, using its software application (a recording device), eavesdropped upon the confidential communications Plaintiffs and putative Class Members sent to various celebrities.

74.    Plaintiffs and putative Class Members did not consent to Defendant's eavesdropping and recording of these communications.

75.    Defendant, therefore, violated California Penal Code § 632(a).

76.    California Penal Code § 632.7(a) makes liable "[e]very person who, without the consent of all parties to the communication, intercepts or receives and intentionally records, or assists in the interception or reception and recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone[.]"

77.    Plaintiffs and putative Class Members sent the text messages from their cell phones to what was held out as the personal telephone number of various celebrities.

78.    Defendant instead intercepted, received, recorded, and scanned these communications without Plaintiffs' and putative Class Members' consent.

79.    Defendant, therefore, violated California Penal Code § 632.7.

80.    Each of the aforementioned violations are enforceable privately via California Penal Code § 637.2, which provides for statutory damages of $5,000 per violation.

**CLASS ACTION COMPLAINT**

81.     As Defendant committed the three violations described above, Plaintiffs and putative Class Members are entitled to $15,000 for each text message sent to Defendant's clients.

82.     The policies to intercept, receive, record, and scan these messages were designed and implemented in California.

83.     Upon information and belief, the messages were intercepted, recorded, and stored on servers located in California.

## ECPA CLAIM

84.     The ECPA makes liable any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication[.]" 18 U.S.C. § 2511(1)(a).

85.     "Electronic communication" is defined as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce[.]"

86.     Plaintiffs' and putative ECPA Class Members' text messages are electronic communications as defined by the statute.

87.     "Intercept" means "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device.

13

**CLASS ACTION COMPLAINT**

88.    "Electronic, mechanical, or other device" means "any device or apparatus which can be used to intercept a wire, oral, or electronic communication[.]"

89.    Defendant's software application that captures Plaintiffs' and putative ECPA Class Members' text messages is an electronic device.

90.    Defendant's use of this software application to divert, capture, and record Plaintiffs' and putative ECPA Class Members' text messages qualifies as an "intercept."

91.    A person who violates 18 U.S.C. § 2511(1)(a) is liable for $10,000 in statutory damages to any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used.

92.    For the same reasons as set forth for Plaintiffs' CIPA Claims, Defendant is liable to Plaintiffs and putative ECPA Class Members for violations of ECPA.

## CLASS ACTION ALLEGATIONS

93.    Plaintiffs bring this action under Federal Rule of Civil Procedure 23 on behalf of Classes defined as follows:

**Nationwide CIPA Class:** Since March 30, 2019, Plaintiffs and all persons in the United States who sent a text message to a number assigned to one of Defendant's clients and did not subsequently register for Defendant's Community.com service.

//

///

14

**CLASS ACTION COMPLAINT**

1

**Nationwide ECPA Class:** Since March 30, 2019, Plaintiffs and all

2

persons in the United States who sent a text message to a number

3

assigned to one of Defendant's clients and did not subsequently register

4

for Defendant's Community.com service.

5

6

**California CIPA Class:** Since March 30, 2019, Plaintiffs and all

7

persons in California who sent a text message to a number assigned to

8

one of Defendant's clients and did not subsequently register for

9

Defendant's Community.com service.

10

11

**California ECPA Class:** Since March 30, 2019, Plaintiffs and all

12

persons in California who sent a text message to a number assigned to

13

one of Defendant's clients and did not subsequently register for

14

Defendant's Community.com service.

15

16

94.    Excluded from the Classes are Defendant and any entities in which

17

Defendant has a controlling interest; Defendant's agents and employees; any Judge

18

and Magistrate Judge to whom this action is assigned and any member of their staffs

19

and immediate families; and any claims for personal injury, wrongful death, and/or

20

emotional distress.

21

15

**CLASS ACTION COMPLAINT**

95.     The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

96.     The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant maintains written and electronically stored data showing:

   a.  The telephone numbers from which Class Members sent a text message to any of Defendant's "Community" telephone numbers;

   b.  The telephone numbers that never signed up for Defendant's platform;

   c.  The names, phone numbers, and email addresses of Class Members.

97.     The Classes are comprised of thousands of individuals nationwide and thousands of individuals in California.

98.     There are common questions of law and fact affecting the rights of the Members of the Classes, including, *inter alia*, the following:

   a.  Whether Defendant intercepted, eavesdropped on, and/or recorded the contents of the text messages that Plaintiffs and putative CIPA and ECPA Class Members sent;

   b.  The mechanisms used to intercept, eavesdrop on, and/or record the conversations;

   c.  Whether Defendant obtained consent from all intended parties to intercept, eavesdrop on, and/or record the conversations;

**CLASS ACTION COMPLAINT**

d.  Whether Defendant obtained express written consent prior to sending its telemarketing text messages;

e.  Whether Defendant sent its text messages using an automatic telephone dialing system;

f.  Whether Defendant's text messages were telemarketing;

g.  Whether Plaintiffs and the Classes were damaged and the extent of damages for such violations; and

h.  Whether Defendant should be enjoined from engaging in such conduct in the future.

99.  Plaintiff McGinnis and Plaintiff Boulton are members of the CIPA and ECPA Classes in that they each sent a text message to a number assigned to one of Defendant's clients, each was attempting to text one of Defendant's clients for the first time, and each did not subsequently register for Defendant's services.

100.  Plaintiffs' claims are typical of the putative Class Members' claims in that they arise from Defendant's uniform conduct and are based on the same legal theories.

101.  Plaintiffs have no interests antagonistic to, or in conflict with, the Classes.

102.  Plaintiffs will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent them and the Classes.

**CLASS ACTION COMPLAINT**

103.   Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

104.   The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

105.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each putative Class Member make individual actions uneconomical.

106.   Common questions will predominate, and there will be no unusual manageability issues.

**FIRST CAUSE OF ACTION**

**Violations of CIPA, California Penal Code § 631**

**(On Behalf of Plaintiffs and the CIPA Classes)**

107.   Plaintiffs and the proposed CIPA Classes incorporate the foregoing allegations as if fully set forth herein.

108.   Plaintiffs and CIPA Class Members each sent text messages to telephone numbers intending and expecting direct communication with the person held out as owning that number.

109.   At no point prior to sending these messages did Defendant, the intended recipient of the message, or anyone else disclose that the text message sent, including its contents, would not actually reach the intended recipient until after Plaintiffs and

18

**CLASS ACTION COMPLAINT**

putative CIPA Class Members signed up for Defendant's services, or that the text message would instead be diverted to, read, and recorded on Defendant's servers in California.

110. Plaintiffs and CIPA Class Members therefore did not consent to Defendant's interception and reading.

111. This interception and reading occurred while the messages were in transit to the intended recipient.

112. Defendant intercepted and read these messages intentionally.

113. Accordingly, Defendant violated California Penal Code § 631.

114. Plaintiffs and CIPA Class Members are entitled to $5,000 for each wrongfully intercepted and read text message pursuant to California Penal Code § 637.2.

**SECOND CAUSE OF ACTION**

**Violations of the CIPA, California Penal Code § 632**

**(On Behalf of Plaintiffs and the CIPA Classes)**

115. Plaintiffs and the proposed CIPA Classes incorporate the foregoing allegations as if fully set forth herein.

116. Plaintiffs and CIPA Class Members each sent a text message to a telephone number intending and expecting direct communication with the person held out as owning that number.

19

**CLASS ACTION COMPLAINT**

117.   Plaintiffs and CIPA Class Members had an objectively reasonable expectation of privacy in these communications.

118.   At no point prior to sending these messages did Defendant, the intended recipient of the message, or anyone else disclose that Defendant's software application would eavesdrop on the text message and its content, record the text message, and store the text message on Defendant's servers in California.

119.   Plaintiffs and CIPA Class Members therefore did not consent to Defendant's eavesdropping and recording.

120.   Accordingly, Defendant violated California Penal Code § 632.

121.   Plaintiffs and CIPA Class Members are entitled to $5,000 for each wrongfully intercepted and read text message pursuant to California Penal Code § 637.2.

**THIRD CAUSE OF ACTION**

**Violations of CIPA, California Penal Code § 632.7**

**(On Behalf of Plaintiffs and the CIPA Classes)**

122.   Plaintiffs and the proposed CIPA Classes incorporate the foregoing allegations as if fully set forth herein.

123.   Plaintiffs and CIPA Class Members sent text messages to telephone numbers intending and expecting direct communication with the person held out as owning that number.

**CLASS ACTION COMPLAINT**

1      124.   Plaintiffs and CIPA Class Members used their cellular telephones to send

2 these text messages.

3      125.   At no point prior to sending these messages did Defendant, the intended

4 recipient of the message, or anyone else disclose that Defendant would intercept and

5 record these text messages, including their contents, on Defendant's servers in

6 California.

7      126.   Plaintiffs and CIPA Class Members therefore did not consent to

8 Defendant's interception and recording.

9      127.   Accordingly, Defendant violated California Penal Code § 632.7.

10      128.   Plaintiffs and CIPA Class Members are entitled to $5,000 for each

11 wrongfully intercepted and read text message pursuant to California Penal Code

12 § 637.2.

13                **FOURTH CAUSE OF ACTION**

14           **Violations of ECPA, 18 U.S.C. § 2511(1)(a)**

15          **(On Behalf of Plaintiffs and the ECPA Classes)**

16      129.   Plaintiffs and the proposed ECPA Classes incorporate the foregoing

17 allegations as if fully set forth herein.

18      130.   Plaintiffs and ECPA Class Members sent text messages to telephone

19 numbers intending and expecting direct communication with the person held out as

20 owning that number.

21      131.   These text messages qualify as electronic communications.

**CLASS ACTION COMPLAINT**

132.   At no point prior to sending these messages did Defendant, the intended recipient of the message, or anyone else disclose that Defendant would intercept and record these text messages, including their contents, on Defendant's servers in California.

133.   Plaintiffs and ECPA Class Members therefore did not consent to Defendant's interception and recording.

134.   Defendant intentionally intercepted the content of these text messages.

135.   Defendant used an electronic device.

136.   Accordingly, Defendant violated 18 U.S.C. § 2511(1)(a).

137.   Plaintiffs and ECPA Class Members are entitled to $10,000 for each wrongfully intercepted and read text message pursuant to 18 U.S.C. § 2520(c)(2)(B), in addition to their reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff McGinnis and Plaintiff Boulton, individually and on behalf of the Classes, pray for the following relief:

A.   An order certifying the Classes as defined above, appointing Plaintiffs McGinnis and Boulton as the representatives of the CIPA Classes and ECPA Classes, and appointing their counsel as Class Counsel;

B.   An order declaring that Defendant's actions, as set out above, violate California Penal Code §§ 631, 632, and 632.7, and 18 U.S.C. § 2511, *et seq.;*

**CLASS ACTION COMPLAINT**

C.     An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D.     An award of statutory damages for violations of California Penal Code §§ 631, 632, and 632.7, and 18 U.S.C. § 2511 *et seq.;*

E.     An award of reasonable attorneys' fees and costs; and

F.     Such other and further relief permitted by the aforementioned statutes or that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiffs request a trial by jury of all claims that can be so tried.

Dated:  March 31, 2023            **LIPPSMITH LLP**

                              By:     /s/ *Graham B. LippSmith*
                                      Graham B. LippSmith
                                      MaryBeth LippSmith
                                      Jaclyn L. Anderson

                              **GLAPION LAW FIRM**

                              Jeremy M. Glapion
                              *Pro Hac Vice Application Forthcoming*

                              **TOUSLEY BRAIN STEPHENS PLLC**

                              Jason T. Dennett
                              *Pro Hac Vice Application Forthcoming*
                              Kaleigh N. Boyd
                              *Pro Hac Vice Application Forthcoming*

                              Attorneys for Plaintiffs and the Class

23

**CLASS ACTION COMPLAINT**
