# EXHIBIT A

No *Shepard's* Signal™
As of: September 12, 2023 2:20 AM Z

# *Toston v. JetBlue Airways Corp.*

United States District Court for the Central District of California

August 23, 2023, Decided; August 23, 2023, Filed

2:23-cv-01156-SVW-E

**Reporter**
2023 U.S. Dist. LEXIS 148675 *

Luther Toston v. JetBlue Airways Corporation

**Counsel:** [*1] For Jetblue Airways Corporation, Defendant: Rebekah S. Guyon, LEAD ATTORNEY, Greenberg Traurig LLP, Los Angeles, CA; Jacob D. Bundick, PRO HAC VICE, Greenberg Traurig LLP, Las Vegas, NV.

For Luther Toston, individually and on behalf of all others similarly situated, Plaintiff: John J. Nelson, LEAD ATTORNEY, Milberg Coleman Bryson Phillips Grossman PLLC, Beverly Hills, CA; MaryBeth V. Gibson, PRO HAC VICE, The Finley Firm PC, Atlanta, GA.

**Judges:** STEPHEN V. WILSON, UNITED STATES DISTRICT JUDGE.

**Opinion by:** STEPHEN V. WILSON

## Opinion

**CIVIL MINUTES - GENERAL**

**Proceedings**: ORDER GRANTING DEFENDANTS MOTION TO DISMISS [21]

**I. Introduction**

Before the Court are motions to dismiss under *12(b)(1)* and *12(b)(6)* filed by Defendant JetBlue Airways Corporation. ECF No. 21. For the foregoing reasons, Defendant's 12(b)(1) motion is GRANTED, and Defendant's 12(b)(6) motion is DENIED as MOOT.

**II. Background**

The present case arises from the alleged tracking of Plaintiff Luther Toston's interactions with the Defendant's website. Defendant operates a website, where consumers like Plaintiff can search travel options, book flights, and find other travel related information. ECF No. 25 ("FAC") at ¶¶ 4, 47, 62. Embedded into Defendant's website is a "Session Replay [*2] Code." *Id.* at ¶ 65.

The Session Replay Code is a software that collects every detail of every action taken on Defendant's website and transmits this information in real time to an online marketing company, FullStory. *Id.* at ¶¶ 26, 33-34, 50-53. With this information FullStory can recreate a visitor's browsing session, and even associate a session with a particular individual. *Id.* at ¶¶ 39-40

Plaintiff contends that he has visited Defendant's website and browsed for flight options to and from LAX. *Id.* at ¶ 61. Plaintiff further alleges that he was unaware of the Session Replay Code, and the "intimate level of detail" the Session Replay Code disclosed to third parties. *Id.* at ¶¶ 59, 62.

Based on these events, as amended, Plaintiff brings the following claims: **1)** California Invasion of Privacy; 2) Statutory Larceny under California Law; 3) Invasion of Privacy under the California Constitution; 4) Intrusion upon Seclusion; 5) Public Disclosure of Private Facts; 6) a violation of California's UCL. *Id.* at ¶¶ 95-180.

Plaintiff filed the instant action on February 15, 2023, and filed an amended complaint on June 2, 2023. ECF Nos. 1, 25. Defendant filed the instant motion to dismiss on July 3, [*3] 2023. ECF No.21.

**III. Legal Standard**

Article III of the Constitution limits the court's jurisdiction to "Cases" and "Controversies." *Spokeo, Inc. v. Robins, 578 U.S. 330, 337, 136 S. Ct. 1540, 194 L. Ed. 2d 635*

*(2016)*. To satisfy the "Cases" and "Controversies" requirement, a Plaintiff must have standing to sue. *Id. at 338*. Article DI standing requires three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* To establish an injury in fact, a plaintiff must show that he or she: 1) suffered an invasion of a legally protected interest that is 2) concrete, and 3) particularized, and 4) actual or imminent, not conjectural or hypothetical. *Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)*.

"Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a *Rule 12(b)(1)* motion to dismiss." *Chandler v. State Farm Mut. Auto Ins. Co., 598 F3d 1115, 1122 (9th Cir. 2010)* (citations omitted). The plaintiff bears the burden of proving the existence of subject matter jurisdiction. *Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996)*. Moreover, a plaintiff "must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez, 141 S.Ct. 2190, 2208, 210 L. Ed. 2d 568 (2021)*.

"For purposes of ruling on a motion to dismiss for want of standing, [a court] must accept as **[*4]** true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Maya v. Centex Corp., 658 F.3d 1060, 1068 (9th Cir. 2011)* (quoting *Warth v. Seldin, 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)*). "In applying this standard, [the Court] must determine whether the plaintiffs have 'clearly allege[d] facts demonstrating each element' of standing." *Namisnak v. Liber Techs., 971 F.3d 1088, 1092 (9th Cir. 2020)* (quoting *Spokeo, 136 S. Ct. at 1547*).

**IV. Discussion**

Here, Defendant contends that Plaintiff does not have standing, because he has failed to allege that he suffered a concrete injury. "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Spokeo, 578 U.S. at 340*. The concreteness requirement serves to anchor violations of legal harms into the real world, ensuring that a plaintiff is actually harmed. *See id.* ("Robins cannot satisfy the demands of Article III by alleging a bare procedural violation.").

However, a concrete injury is "not [...] necessarily synonymous with 'tangible'" injury. *Id. at 340*. While tangible injuries may readily be "concrete" injuries, intangible injuries may also be "concrete" injuries. Id. ("Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete."). Indeed, "[v]arious intangible harms," including "reputational harms, disclosure of **[*5]** private information, and intrusion upon seclusion" may also be concrete. *TransUnion, 141 S.Ct. at 2204*. However, the alleged injuries of a plaintiff must bear a "close relationship to harms traditionally recognized as providing a basis for lawsuit in American courts." *Id.*

The Ninth has also recognized that "violations of the right to privacy have long been actionable at common law." *In re Facebook, Inc. Internet Tracking Litig., 956 F.3d 589, 599 (9th Cir. 2020)*. However, that right to privacy encompasses an "individual's control of information concerning his or her person." *Id. at 598*.

In support of its argument, Defendant cites to *Lightoller v. Jetblue Airways Corp.*, which is substantially similar to the present case, to contend that Plaintiff lacks standing. *No. 23-CV-00361-H-KSC, 2023 U.S. Dist. LEXIS 102158, 2023 WL 3963823 (S.D. Cal. June 12, 2023)*. Like the present case, *Lightoller* involved the use the Session Replay Code on Defendant's website. *2023 U.S. Dist. LEXIS 102158, [WL] at *1*. And like Plaintiff, the plaintiff in *Lightoller* visited Defendant's website to obtain information on flight pricing. *Id.* In holding that the plaintiff failed to allege a concrete injury, the court wrote:

> These allegations are insufficient to allege a concrete harm that bears a close relationship to the substantive right of privacy (i.e., an individual's right to control information concerning his or her person). Although Plaintiff alleges that **[*6]** Defendant monitored and recorded her communications via software when she visited Defendant's website, Plaintiff does not allege that she disclosed any personal information when she visited the website. As such, no personal information was intercepted and recorded. The only internet communications specifically alleged in the complaint is that Plaintiff "obtain[ed] information on flight pricing." [...] Flight pricing information is not personal information. [...] As such, Plaintiff has failed to adequately allege that she suffered any concrete harm that bears a close relationship to the right to control personal information, meaning Plaintiff has failed to establish an injury in fact.

*2023 U.S. Dist. LEXIS 102158, [WL] at \*4*.

*Lightoller*'s reasoning is on all fours with the present case. Here, Plaintiff only alleges that the Session Replay Code recorded his interactions with Defendant's website, including how he interacted with the website to retrieve flight information and prices. These allegations are substantially similar to those in *Lightoller*. Furthermore, Plaintiff has not alleged that he disclosed any personal information while visiting Defendant's website. Indeed, Defendant does not even mention *Lightoller*, **[\*7]** let alone explain why *Lightoller*'s reasoning should not apply to the present case.

Plaintiff cites to *Facebook*, where the Ninth Circuit held that plaintiff had adequately alleged harm to their interest in controlling their personal information. However, *Facebook* is distinguishable. *Facebook* involved comprehensive tracking that results in Facebook gaining a "cradle-to-grave profile" without users' consent. *956 F.3d at 599*. The plaintiffs alleged that Facebook continued to collect their data after they had logged off of the social media platform, which permitted Facebook to compile a users' browsing data beyond the user's use of Facebook. *Id. at 603*. Given this comprehensive tracking, Facebook was able to amass a great degree of personalized information that would allegedly reveal an individual's likes, dislikes, interests, and habits over a significant amount of time, without affording users a meaningful opportunity to control or prevent the unauthorized exploration of their private lives. *Id. at 599*.

Plaintiff's allegations fall short of Facebook for two reasons. First, Plaintiff does not plausibly allege that any sensitive personal information was collected. At most, it seems that Defendant was able to track, the terms that Plaintiff's used **[\*8]** to search for flights out of LAX, and his exact mouse and keyboard interactions with the website. This information, at least under these circumstances, does not plausibly amount to sensitive personal information. *See Lightoller, 2023 U.S. Dist. LEXIS 102158, 2023 WL 3963823, at \*5* (distinguishing *Facebook* because the plaintiff did not alleged that Defendant recorded or collected any of her personal information); *Byars v. Sterling Jewelers, Inc., No. 5:22-CV-01456-SB-SP, 2023 U.S. Dist. LEXIS 61276, 2023 WL 2996686 at \*3 (C.D. Cal. Apr. 5, 2023)* (distinguishing *Facebook*, because the Plaintiff did not allege that she disclosed any sensitive information to Defendant, much less identify any specific personal information she disclosed that implicated a protectable privacy interest).

Second, the data collection in *Facebook* was significantly more comprehensive than the data collection Defendant performs in this case. The tracking in *Facebook* went beyond the interactions with Facebook's applications, and extended to the browsing activities of a user even when logged off of Facebook to gather personally identifiable browsing history, which could "reveal an individual's likes, dislikes, interests, and habits over a significant amount of time, without affording users a meaningful opportunity to control or prevent the unauthorized exploration of their private lives." *956 F.3d at 599*; Cf *Carpenter v. United States, 201 L. Ed. 2d 507, 138 S. Ct. 2206, 2217-19 (2018)* (finding that the "near perfect surveillance" of **[\*9]** cell-site location information implicated an individual's reasonable expectation of privacy in the whole of his physical movements).

By contrast, there is no allegation that Defendant's tracking of interactions with their website goes beyond their website. *See Massie v. Gen. Motors LLC, No. CV 21-787-RGA, 2022 U.S. Dist. LEXIS 28969, 2022 WL 534468, at \*3 (D. Del. Feb. 17, 2022)* ("The degree of the invasion of privacy at issue in *In re Facebook* is hardly comparable to the 'invasion of privacy' Plaintiffs allege here. GM only recorded Plaintiffs' browsing while Plaintiffs were on GM's own website, GM obtained no personal information from Plaintiffs, and Plaintiffs make no allegations that GM attempted to sell or monetize the information it collected in any way.").

Plaintiff additionally cites to *Katz-Lacabe v. Oracle America, Inc.* to contend that they "are not yet required to make specific allegations as to what particular information was purportedly sold[]" to state a claim. *No. 22-CV-04792-RS, 2023 U.S. Dist. LEXIS 61306, 2023 WL 2838118, at \*6 (N.D. Cal. Apr. 6, 2023)*. However, *Katz-Lacabe* is distinguishable.

First, to the extent that Plaintiff relies on *Katz-Lacobe* for the proposition that simply mentioning "personal information" in his complaint is enough to confer standing, the Court rejects such a rule. A plaintiff must plausibly allege that they have standing. *Dutta v. State Farm Mut. Auto. Ins. Co., 895 F.3d 1166, 1172 (9th Cir. 2018)* ("In the absence of a plausible **[\*10]** concrete injury, Dutta cannot establish standing to sue."). And details matter, as some "personal information" may implicate privacy interest, while others may not.

"For example, if Plaintiff disclosed her basic contact information, such as her email address or phone number, courts have found that type of information does

not bear a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Mikulsky v. Noom, Inc., No. 3:23-CV-00285-H-MSB, 2023 U.S. Dist. LEXIS 124719, 2023 WL 4567096, at \*5 (S.D. Cal. July 17, 2023)* (citing *IC. v. Zynga, Inc., 600 F. Supp. 3d 1034, 1049-50 (N.D. Cal. 2022)*; *Massie v. Gen. Motors LLC, No. 21-cv-787-RGA, 2022 U.S. Dist. LEXIS 28969, 2022 WL 534468, at \*5 (D. Del. Feb. 17, 2022)* (" 'Eavesdropping' on communications that do not involve personal information, personally identifiable information, or information over which a party has a reasonable expectation of privacy does not amount to a concrete injury."); *see also Transunion* (noting that *Spokeo*, which was at the motion to dismiss stage, requires courts to assess whether a plaintiff has identified a close historical or common-law analogue for their asserted injury). Without these critical details, "the Court is unable to determine whether the 'personal information' Plaintiff inputted is protected or whether it was merely information akin to basic contact information that would not trigger a protectable privacy interest." *Mikulsky, 2023 U.S. Dist. LEXIS 124719, 2023 WL 4567096, at \*5*. Holding otherwise, would water-down standing **[\*11]** requirements at the motion to dismiss stage, rendering *Spokeo* and *Transunion*'s requirement for a Plaintiff to identify a "concrete" injury meaningless at the motion to dismiss stage.

Second, *Kat-Lacabe* included allegations of comprehensive tracking. Specifically, the plaintiff alleged:

> that Katz-Lacabe "received a document from Oracle indicating Oracle had tracked, compiled, and analyzed his web browsing and other activity and thereby created an electronic profile on him," and that "Oracle continues to track [his] internet and offline activity, enrich the profile of him as described below, and make his personal information available to third parties without his consent."

*2023 U.S. Dist. LEXIS 61306, 2023 WL 2838118, at \*5*. Thus, unlike Plaintiff, the plaintiff in *Kat-Lacabe* plausible alleged a privacy violation.

Likewise, *Revitch v. New Moosejaw*, LLC, is also distinguishable as that case involved allegations that the defendant helped a third party "eavesdrop on [the plaintiff's] communications and scan his computer for files revealing his identity." *No. 18-CV-06827-VC, 2019 U.S. Dist. LEXIS 186955, 2019 WL 5485330, at \*1 (N.D. Cal. Oct. 23, 2019)*. Surveillance under those circumstance could plausibly amount to a privacy violation.

Accordingly, because Plaintiff has failed to plausibly allege that he suffered a concrete, privacy violation, **[\*12]** Defendant's 12(b)(1) motion is GRANTED.[1]

**IT IS SO ORDERED**.

---

[1] Because the Court dismisses Plaintiff's complaint on jurisdictional grounds, the Court need not address Defendant's 12(b)(6) argument which challenges the merits of Plaintiff's claims. Accordingly, Defendant's 12(b)(6) motion is DENIED as MOOT.

**End of Document**